UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

ROBERT M. BORIN,                                    Case No. DT 11-03122
                                                    Chapter 13
            Debtor.                                 Hon. Scott W. Dales

_____/

OPINION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

I. INTRODUCTION

Chapter 13 Debtor Robert Borin ("Mr. Borin" or the "Debtor") objects to the claim of his mortgagee, Arch Bay Holdings, LLC – Series 2010C ("Arch Bay"), on the grounds that the creditor's Proof of Claim overstates the arrearage by failing to give him credit for prepetition payments. *See* Debtor's Objection to the Proof of Claim Number 14-1 Filed By Arch Bay Holdings, LLC - Series 2010C (the "Objection," DN 41).  Arch Bay filed a written response (the "Response," DN 53). The court conducted an evidentiary hearing on October 25, 2011 in Traverse City, Michigan.

This Opinion and Order constitutes the court's findings of fact and conclusions of law in accordance with Fed R. Bankr. P. 7052 and 9014.  For the following reasons, and to the extent described herein, the court will sustain the Debtor's Objection to Arch Bay's Proof of Claim.

## II. <u>JURISDICTION</u>

The court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334. The case and this contested matter have been referred to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). An objection to claim is clearly a "core" proceeding within the meaning of 11 U.S.C. § 157(b)(2)(B), and the Supreme Court's recent decision in *Stern v. Marshall,* 131 S. Ct. 2594 (2011), does not undermine this court's authority to enter a final order. Indeed, by citing *Katchen v. Landy*, 382 U. S. 323 (1966) and *Langenkamp v. Culp*, 498 U. S. 42, 44 (1990), the high court recognized that non-tenured judicial officers may resolve disputes in the claims allowance process, including disputes "integral to the restructuring of the debtor-creditor relationship." *Stern*, 131 S. Ct. at 2617. Accordingly, this Opinion and Order will be final, subject to appellate review under 28 U.S.C. § 158.

## III. <u>ANALYSIS</u>

At the hearing on the Objection, the Debtor was the only witness. Arch Bay relied exclusively on the *prima facie* evidentiary effect of its Proof of Claim and offered no testimony or other evidence beyond the fact that it filed a Proof of Claim. *See* Fed R. Bankr. P. 3001(f). The parties agreed that the Debtor bears the initial burden of rebutting the presumption of validity and amount of Arch Bay's claim. They also agreed that if the Debtor succeeds in rebutting the presumption, Arch Bay must then shoulder the burden of proving its claim. *See In re Weese,* 428 B.R. 380 (Bankr. W.D. Mich. 2010). Having the opportunity to judge the demeanor and credibility of Mr. Borin, the court concludes that

he has rebutted the *prima facie* evidentiary effect of Arch Bay's Proof of Claim to the extent provided in this Opinion.

In 1970, Mr. Borin purchased and developed a parcel of real estate in Manton, Michigan which, on the petition date, included several improvements: a residence, a barn, and a guest house with apartment. The real estate is a 40-acre parcel where Mr. Borin has for many years operated a conference center. He is a counselor with a Masters degree in psychology who has developed his land, at least in part, as a family resort and healing environment for troubled children. *See* Exhibit A (brochure for "Borinville"). He also rents some of the outbuildings, from which the court infers that he uses the 40-acre property for commercial and residential purposes.

Beginning sometime in 2008, Mr. Borin suffered two unfortunate events that interfered with his ability to work and his otherwise stellar mortgage payment history. The guest house structure caught fire and, more dramatically, Mr. Borin broke his neck in five places when he was "T-boned" in a car accident. His injuries prevented him from working during the many months of convalescence. Understandably, confined in traction, he fell behind in making his payments to the lender, CitiMortgage, Inc. ("CitiMortgage"), who then held his note and mortgage. *See* Exhibits 1, 1A & 2A (Proof of Claim).

After enduring these unfortunate injuries, Mr. Borin contacted the servicer for CitiMortgage about possible forbearance or modification of his payment schedule under the note. In approximately August 2009, he applied for a loan modification and pursuant to oral direction from his mortgage servicer, he made payments in the reduced amount of $1,240.00, starting in September 2009 and continuing for 12 months. After making these payments for several months, he learned that the lender or its servicer had declined to

modify his payment obligation, even though they accepted his reduced payments while his application for modification was pending, but before the servicer informed him that it had denied the request. Mr. Borin credibly testified that during this period the lender or its servicer was unresponsive to his request for information regarding the status of his modification or its reconsideration. He also admitted that, as a matter of fact, neither CitiMortgage, nor Arch Bay, nor any other servicer ever formally modified his repayment obligation (except to the extent they directed him to make reduced payments in the amount of $1,240.00 during the approval process).

As a result, he retained two different attorneys and a loan modification "expert" to assist him in resolving his payment situation with the lender. Unfortunately, the lawyers and modification expert were also unsuccessful in securing formal or documented modification of the loan. The testimony established that the lender or its agents ignored Mr. Borin's efforts to communicate, directly and through professional advocates. Sometime in early 2010, when Arch Bay's agent came to the property inquiring about selling it, Mr. Borin learned that the lender was in the process of foreclosing his interest. At that point, understandably frustrated, he filed a voluntary petition for relief under Chapter 13. Presently, his proposed Chapter 13 Plan remains unconfirmed, due in part to the pendency of this claim objection.

On July 18, 2011, Arch Bay timely filed its Proof of Claim (Claim No. 14) which recites that the total secured debt due from Mr. Borin is $313,188.61.   This figure includes a $36,897.69 arrearage. Arch Bay attached a copy of the note and mortgage and two assignment documents to its Proof of Claim, together with a one-page itemization of the charges comprising the arrearage.

The court finds, based upon Mr. Borin's credible testimony and the documentary evidence submitted, that Arch Bay has overstated the arrearage and therefore its Claim. More specifically, the court finds that Arch Bay has failed to give Mr. Borin credit for $14,880.00 representing twelve reduced payments of $1,240.00 that he made in reliance on the mortgage servicer's statements between September 2009 and August 2010.[1]

In addition, the arrearage claim includes $1,472.54 in late fees that Arch Bay or its predecessor tacked onto the debt, perhaps during the pendency of Mr. Borin's modification request.

Arch Bay's authority to collect late payments derives from the seventh paragraph of the Interest First Adjustable Rate Note. *See* Exh. 1A at ¶ 7. That paragraph provides that if Mr. Borin fails to make a full payment, the amount of the late charge will be "5.000% of my payment of overdue interest, during the period when my payment is interest only, and of principal and interest thereafter." *See* Exh. 1A at ¶ 7. By failing to produce a witness, however, Arch Bay has provided the court with no assistance in calculating the late charge. The court does not know how Arch Bay (or its servicer or predecessor) applied Mr. Borin's payments, as this might affect the calculation. *See, e.g., In re Weese*, 428 B.R. at 384 (application of payments affects late fee calculation). Without supporting documents or testimony, and given the credible testimony that Mr. Borin's payments were not late but only reduced in accordance with the lender's agent's instructions, the court will disallow the late charges entirely.

To the extent Arch Bay argues that M.C.L. § 566.132 precludes the oral modification or forbearance implicit in excusing the late charges, the court notes that the

---

[1] The court infers that a mortgage servicer held Mr. Borin's payments in a so-called "suspense account" that evaporated as his note, mortgage, and related servicing rights, shuttled from one secondary mortgage market participant to the next.

**Page 6 of 8**

section protects only a "financial institution" as defined in that statute. Because Arch Bay did not offer any witness or other evidence, the record does not permit the court to find that Arch Bay qualifies as "a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof." M.C.L. § 566.132(3) (defining "financial institution"). Without evidence from Arch Bay (a limited liability company, judging from its formal name), the court will not assume that Arch Bay comes within the protection of the statute.

In its written closing argument, Arch Bay also argues that the parol evidence rule prevents the court from recognizing an oral modification of the parties' written note and mortgage. The short answer to this argument based on the parol evidence rule is that the rule "is not so broad as to prevent a showing of subsequent oral modifications." *Michigan Nat. Bank of Detroit v. Holland-Dozier-Holland Sound Studios*, 250 N.W.2d 532, 533 (Mich. App. 1976) (*citing Rasch v. National Steel Corp.*, 177 N.W.2d 428 (Mich. 1970)). Indeed, the unpublished Sixth Circuit decision that Arch Bay cites in its written closing argument itself recognizes that "[c]ontracts that are within the Statute of Frauds may be modified orally so long as the modified terms are not themselves within the statute." *See Kleese v. FDIC (In re Conneaut Devel., Inc.)*, 1996 U.S. App. LEXIS 1390 (6th Cir. Jan. 16, 1996) (interpreting Ohio law). Here, as the court noted, Arch Bay

has not established that it qualifies as a "financial institution" within the meaning of the particular statute of frauds it cites.[2]

For the foregoing reasons, the court will sustain the Objection to Arch Bay's Claim by reducing the arrearage to $20,545.15. This figure reflects credits in Mr. Borin's favor for (1) the payments he made while the modification request was pending, and (2) the elimination of the late charges allocable to that same period.

## IV. CONCLUSION

The record establishes that Mr. Borin made an earnest and honest effort to meet his obligations to Arch Bay or its predecessors by seeking a modification of his mortgage payments following a serious injury and fire at the rental unit on his property. The lender or its agents returned the favor by dodging his inquiries, failing to apply his payments, imposing late fees after they induced him to continue making payments in a reduced amount, ignoring his counsel's inquiries, and finally failing to send a witness to the claim objection hearing.

Perhaps now, given the nature of Mr. Borin's 40 acre mixed-use parcel and the Chapter 13 power to modify the rights of secured creditors, he may at last succeed in modifying his mortgage through his plan. *See* 11 U.S.C. § 1322(b)(2) (Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . ."); *In re Dinsmore*, 141 B.R. 499 (Bankr. W.D. Mich. 1992) (mortgage secured by debtor's residence and commercial real estate is not protected from modification by § 1322(b)(2));

---

[2] Arch Bay's citation to *Barter v. U.S. Bank, N.A.*, 2011 U.S. Dist. LEXIS 3780 (E.D. Mich. Jan. 13, 2011), may establish that U.S. Bank, N.A. is a "financial institution" but does not establish that Arch Bay is.

*see generally* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 122.1, at ¶ 1, Rev. June 14, 2004, www.Ch13online.com ("On the theory that a "principal residence" is a place where the debtor lives, not a place that produces income, many decisions recognize that a security interest that includes rental property, farmland or other income-producing property is not protected from modification by § 1322(b)(2)").

The court will consider confirmation of the Debtor's Chapter 13 Plan in a few weeks. For now, it is enough to conclude that his Objection to Arch Bay's claim is well-taken.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection (DN 41) is SUSTAINED as provided herein.

IT IS FURTHER ORDERED that Arch Bay shall have a claim in the amount of $296,836.07, which includes an arrearage in the amount of $20,545.15.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Claude C. Woods, Esq., Jonathan Rosenthal, Esq., and Robert M. Borin.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: November 02, 2011**